**FILED**



*10:00 am, 5/15/26*

**Margaret Botkins
Clerk of Court**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF WYOMING

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

CHEYENNE SWETT       ,

    Defendant.

No.  26-CR-30-S

---

## ORDER DISMISSING INDICTMENT WITHOUT PREJUDICE

---

This matter comes before the Court on nine substantively identical motions to dismiss grand jury indictments.[1] These motions allege prosecutorial misconduct occurred before the grand jury, implicating defendants across the entire District (collectively "Defendants"). The Government opposes dismissal. For the reasons that follow, Defendants' motions to dismiss are granted without prejudice.

### BACKGROUND

On March 16, 2026, prospective grand jurors arrived at the Casper federal courthouse for selection and empanelment. Before voir dire—and before the proceeding was on the record or the judge was present—the U.S. Attorney for the District of Wyoming addressed the grand jury venire. According to the uncontradicted[2] affidavit of a prospective juror, the U.S. Attorney

---

[1] *United States v. Hopper*, No. 26-cr-28-ABJ (ECF No. 23); *United States v. Swett*, No. 26-cr-30-SWS (ECF No. 23); *United States v. Allen*, No. 26-cr-31-ABJ (ECF No. 17); *United States v. Johnson*, No. 26-cr-33-ABJ (ECF No. 21); *United States v. Antelope*, No. 26-cr-34-ABJ (ECF No. 22); *United States v. Jacoby*, No. 26-cr-35-SWS (ECF No. 27); *United States v. Miller*, No. 26-cr-36-ABJ (ECF No. 27); *United States v. Duran*, No. 26-cr-38-SWS (ECF No. 20), *United States v. Ocon*, No. 26-cr-39-SWS (ECF No. 38).

[2] The Government does not contest the veracity of these allegations, only Defendants' characterization of them. (United States' Resp. to Def.'s Mot. to Dismiss Indictment Due to Prosecutorial Misconduct and Structural Defect in Grand Jury Proceeding ("Pl.'s Resp.") at 1) ("While USA Smith's comments were ill advised, they were not as offensive as the Defendant contends when fairly viewed in context."); (*id.* at 7) ("While the United States disputes the Defendant's characterization of USA Smith's statements, [they] still cannot succeed even if this court takes the allegations at face value . . . ."); *see also* (*id.* at 9) (arguing the comments were "rooted in truth" because "it was true that the grand jury would hear a variety of cases, some dealing with heinous crimes such as murder, and that the cast of characters they would hear about would be undesirable in many respects").

1

> first inquired about where everyone was from . . . [and] ask[ed] if anyone had questions about the process.
>
> [I]n explaining the process, [the U.S. Attorney] stated . . . the proceedings are different from a normal jury trial. . . . [T]he defendants were not going to be run of the mill criminals seen in state court. . . . [T]he grand jurors were going to hear cases where the defendants were bad people. He described the defendants as "bad guys" who "did what you are going to hear about." He also stated the defendants were "murderers" and that the deliberations "won't take long" to determine they committed the alleged crimes based on the evidence provided to the grand jury. He stated the last grand jury was able to come back in 3 minutes based on the evidence provided to them.

(Witness 1 Statement Summ. at 1.)

Shortly thereafter, the presiding judge entered the courtroom and began the selection process. During the judge's opening remarks, he gave a brief history of grand juries, and addressed the logistics of grand jury service. (Order Disclosing Grand Jury Transcripts, Attach. 1 at 4:18–6:9, 7:10–9:19.) Most relevant to the instant motions are his descriptions of the role of grand jurors. He first distinguished a grand jury from a petit jury, explaining,

> A grand jury . . . does not determine guilt or innocence. Its sole function is to decide, after hearing the Government's evidence and usually without hearing evidence from the defense, whether a person should be indicted; that is, charged and stand trial for a federal crime.

(*Id.* at 10:25–11:6.) Later in response to a comment from a prospective grand juror about the apparent one-sidedness of grand jury proceedings, the judge explained,

> Your experience if selected as a grand juror is to consider -- to ultimately find whether the Government has presented evidence that indicates there's probable cause to believe a crime has been committed and that the person that's accused has actually committed the crime. So your job is sort of a gatekeeper to determine whether probable cause exists on both fronts and to ultimately decide whether a charge should or should not be brought. . . . You're there as a check, if you will, to make sure people are appropriately charged or not charged based on the presentation of the cases.

(*Id.* at 26:12–27:2.) After the grand jury was impaneled and sworn, the judge administered the grand jury charge. Among other things, he stated,

> The grand jury is an independent body and does not belong to any branch of the Government. As members of the grand jury, you, in a very real sense, stand between the Government and the person being investigated by the Government. A federal grand jury must never be made an instrument of private prejudice, vengeance, or malice. It is your duty to see to it that indictments are returned only against those who you find probable cause to believe are guilty and to see to it that the innocent are not compelled to go to trial.

2

. . .
It is extremely important for you to realize that, under the United States Constitution, the grand jury is independent of the United States Attorney and is not an arm or agent of the Federal Bureau of Investigation, the Drug Enforcement Administration, the Internal Revenue Service, or any governmental agency charged with prosecuting a crime.

Simply put, as I have already told you, the grand jury is an independent body and does not belong to any branch of the government. However, as a practical matter, you must work closely with the Government attorneys. They will provide you with the most important service in helping you find your way when confronted with complex legal matters. . . . If past experience is any indication of what to expect in the future, then you can expect candor, honesty, and good faith in matters presented by the Government's attorneys.

However, ultimately you must depend on your own independent judgment never becoming an arm of the United States Attorney's Office. . . . If the facts suggest that you should not indict, then you should not do so even in the face of the opposition or statements of the Government attorney. You would violate your oath if you were merely -- if you merely "rubber-stamped" indictments brought before you by the government representatives.

(*Id.* at 106:1–10, 115:6–116:6.)

Regardless of the judge's instructions to the contrary, Defendants allege the U.S. Attorney's statements deprived them of the right to an indictment by an unbiased grand jury.

By explicitly instructing the grand jury pool that the individuals they would hear about were "bad people," "murderers," and guilty of the alleged conduct before a single witness was sworn, the government unconstitutionally encroached upon the grand jury's independence. . . . [These] conclusive, prejudicial assertions of guilt . . . effectively transformed the grand jurors from independent evaluators of probable cause into a rubber stamp for the prosecution.

(Mot. to Dismiss Indictment Due to Prosecutorial Misconduct and Structural Defect in Grand Jury Proceeding ("Def.'s Mot.") at 4.)

Conversely, the Government argues the judge's statements, and the "selection process for the grand jury[,] ensured that each grand juror was thoroughly educated on his or her independent role and each grand juror took an oath to exercise that judgment." (Pl.'s Resp. at 1.)

However, "[i]n response to the allegations in the Defendant[s'] motion[s], and consistent with the duties imposed on attorneys by [the] Wyoming Rules of Professional Conduct," the U.S. Attorney's Office undertook a review of the March 2026 grand jury proceedings. (*Id.* at 3–4.) It determined the following additional information must be disclosed to the Court:

3

1) During a break, an AUSA saw USA Smith handing out business cards and invited the grand jury panel members to reach out to him. USA Smith reports no grand jurors have reached out to him.

2) After a presentation and vote, but before going on the record for the next case, the foreperson asked something to the effect of "are you going to give us a hard case?" At that point, USA Smith stood up and said something to the effect of, "like I told you guys before, we're only giving you 'slam dunks[.]'" The AUSA who witnessed this corrected that statement by telling the grand jury there would be hard cases and then left the room.

3) USA Smith asked for the list of grand jurors. However, he reports that he has not done anything with it.

(*Id.* at 4.) Still, the Government maintains this conduct is "simply not the kind . . . that would overbear the will of the grand jury." (*Id.* at 7); *see also* (*id.* at 8) ("[T]he United States Attorney's Office investigation revealed that USA Smith was perhaps overly informal and friendly with the grand jury.").

Beginning the next day, the grand jury returned the contested indictments.

## LEGAL STANDARD

The grand jury is an independent institution. *See United States v. Williams*, 504 U.S. 36, 46 (1992) ("[The grand jury] has not been textually assigned . . . to any of the branches described in the first three Articles. It 'is a constitutional fixture in its own right.'" (quoting *United States v. Chanen*, 549 F.2d 1306, 1312 (9th Cir. 1997))); *see also Wood v. Georgia*, 370 U.S. 375, 390 (1962) ("[A]n independent and informed grand jury" is a "necessity to society[.]"). Its independence is entitled to respect, and its work is generally free from judicial review. *See, e.g.*, *Costello v. United States*, 350 U.S. 359, 363 (1956) (rejecting a request to "establish a rule permitting defendants to challenge indictments on the ground that they are not supported by adequate or competent evidence"). "But deference to the grand jury only goes so far. 'Federal courts possess the power[3] and duty to dismiss federal indictments obtained in violation of

---

[3] In the case of prosecutorial misconduct, the power to dismiss an indictment stems from two overlapping and intwined sources: constitutional authority and supervisory authority. *United States v. Kilpatrick*, 821 F.2d 1456, 1465 (10th Cir. 1987), *aff'd sub nom.*, *Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988). The former "focus[es] on the fairness to the defendant and on remedying any harm to his basic rights." *Id.* The latter "is premised on the federal courts' inherent ability to 'formulate procedural rules not specifically required by the Constitution or Congress.'" *Id.* (quoting *United States v. Hasting*, 461 U.S. 499, 505 (1983)).

The Government seems to imply Defendants cannot allege a constitutional violation, and any power to dismiss must stem from the supervisory power. *See* (Pl.'s Resp. at 6) ("Defendant has failed to allege any misconduct prohibited by the Federal Rules of Criminal Procedure or the United States Code. Instead, he relies on the judicially established standards of good conduct invoking the court's supervisory powers."). The Court disagrees. As the Tenth Circuit has recognized—in the context of prosecutorial misconduct—"[a] court may dismiss on the bases of the Fifth Amendment Due Process or Grand Jury Clauses." *Kilpatrick*, 821 F.2d at 1465; *see also id.*

the Constitution or laws of the United States.'" *United States v. Filer*, 762 F. Supp. 3d 730, 744 (N.D. Ill. 2025) (quoting *United States v. Holloway*, 74 F.3d 249, 253 (11th Cir. 1996)); *accord United States v. Kilpatrick*, 821 F.2d 1456, 1465 (10th Cir. 1987), *aff'd sub nom.*, *Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988).

For those alleging prosecutorial misconduct before the grand jury, the burden is substantial. A defendant must show "misconduct [that] is flagrant to the point that there is some significant infringement on the grand jury's ability to exercise independent judgment." *United States v. Hillman*, 642 F.3d 602, 606 (10th Cir. 2011). Moreover, "as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia*, 487 U.S. at 254; *see also Hillman*, 642 F.2d at 936 (explaining the two recognized exceptions to the prejudice inquiry are racial and gender discrimination in grand jury selection; in such cases, prejudice is presumed). Prejudice exists "if it is established that the violation substantially influenced the grand jury's decision to indict, *or* if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia*, 487 U.S. at 256 (emphasis added).

In any challenge to a grand jury indictment, "[a] district court must approach the prospect . . . with caution and circumspection, giving the grand jury its due regard as an independent institution." *Filer*, 762 F. Supp. 3d at 746. *But cf. Hillman*, 642 F.3d at 936 (noting where claims of prosecutorial misconduct at the grand jury are made *after* a guilty verdict is entered at trial, the inquiry is even more

---

(noting "[a] court *may also* dismiss an indictment by relying on its supervisory powers" (emphasis added)); *accord United States v. Sears, Roebuck & Co.*, 719 F.2d 1386, 1391 (9th Cir. 1983) ("Dismissal of an indictment is therefore warranted on constitutional grounds if prosecutorial misconduct has undermined the grand jury's ability to make an informed and objective evaluation of the evidence presented to it.").

Defendants' allegations strike at the very heart of the Fifth Amendment Due Process and Grand Jury Clauses: The right to an indictment by an independent and "unbiased grand jury." *Costello v. United States*, 350 U.S. 359, 363 (1956); *Williams*, 504 U.S. at 49 ("[T]he Fifth Amendment's constitutional guarantee presupposes an investigative body acting independently of either prosecuting attorney or judge." (citation modified)); *Sears Roebuck*, 719 F.2d at 1391 ("Implicit in th[e] language [of the Grand Jury Clause] is the guarantee that a defendant will be indicted only upon the informed and independent determination of a legally constituted grand jury." (citing *Stirone v. United States*, 361 U.S. 212, 218–19 (1960))). Defendants claim the U.S. Attorney's comments and conduct "unconstitutionally encroached upon the grand jury's independence" and "presented conclusive, prejudicial assertions of guilt." (Def.'s Mot. at 4.) In these circumstances, the constitutional authority is clear.

5

demanding, only those threatening the defendant's right to fundamental fairness in the criminal process are cognizable). It is with this in mind that the Court considers Defendants' motions to dismiss.

**DISCUSSION**

Before the Court are a number of statements and actions taken by the U.S. Attorney, which allegedly deprived Defendants of the right to an independent and unbiased grand jury. These allegations will be grouped into two main categories: (1) conclusive statements about the bad character of the Defendants and the weight of the evidence; and (2) statements and conduct that eroded the independence of the grand jury. Also before the Court are statements made by the presiding judge during voir dire, as well as in the grand jury charge. These will be considered, where appropriate, as factors that may cure prejudice.[4]

## I.      Improper Statements and Conduct

### A.      *Conclusive Statements About the Bad Character of Defendants and the Weight of the Evidence*

Before any evidence was presented, the U.S. Attorney told the grand jurors the individuals they would hear about are "bad guys," "murderers," "bad people," and not "run of the mill criminals seen in state court." (Witness 1 Statement Summ. at 1.) With broad strokes he painted all Defendants as one monolithic defendant "who did what you are going to hear about." (*Id.*)

When presenting evidence, a prosecutor can help the grand jury connect the dots and understand what they are seeing and hearing, including why it is significant. *See* Susan W. Brenner & Lori E. Shaw, *Federal Grand Jury: A Guide to Law and Practice* § 2.9 (2025). Prosecutors are legal resources to the

---

[4] Defendants argue the U.S. Attorney's comments amount to structural error. (Defs.' Mot. at 4.) As support they point to a line from *United States v. Lopez-Guitierrez*, which stated an attempt by the "government to unfairly sway the grand jury" may be an example of conduct that "transgress[es] a defendant's right to fundamental fairness." 83 F.3d 1235, 1245 (10th Cir. 1996). This is statement is dicta and does not stand for the proposition that Defendants assert. In *Lopez-Gutierrez*, the court was discussing whether an error should be classified as "technical" or "procedural" for the purpose of determining whether a challenge to the indictment is cognizable *after* a guilty verdict has been returned by the petit jury. *Id.* It is well-accepted that the only two structural errors exempt from the prejudice inquiry are racial and gender bias in grand jury selection—neither of which are implicated here. *Bank of Nova Scotia*, 487 U.S. at 256–57 (listing the "isolated exceptions to the harmless-error rule": racial discrimination and gender discrimination).

grand jury. *Id.* They often explain what the elements of a particular crime are, and they may comment on how the evidence supports a determination of probable cause. *See, e.g.*, U.S. Dep't of Just., Federal Grand Jury Practice 45 (1993) ("In those situations in which summarization of the evidence is appropriate, an Assistant [U.S. Attorney] may relate how the evidence establishes the credibility of a witness or probable cause for the charges contained in the recommended indictment."). Additionally, while prosecutors "should avoid expressing [their] own personal belief[s] as to the guilt of the defendant, the strength of the evidence, or the credibility of witnesses," *id.*, they are not required to be stoics. The process is accusatory, and "[g]rand jurors, as a practical matter, . . . are aware that a case is being presented to them because the prosecutor feels that an indictment is warranted," *United States v. Cederquist*, 641 F.2d 1347, 1353 (9th Cir. 1981). For example, in *Filer*, the court found a prosecutor's use of the terms "fraud" and "crime" were not improper because they "were explanatory in nature . . . and not unduly argumentative." 762 F. Supp. 3d at 751. These terms were used as descriptors to explain the evidence the grand jurors were hearing. *Id.* For example, when the prosecutor gave a timeline of the events, they stated, "That's the start of the fraud." *Id.* at 750; *see also Hillman*, 642 F.3d at 935 ("While the AUSA's use of the term "fraud" was conclusory and should not have been used, the question was an attempt to establish a time-frame . . . .").

Permissible, circumscribed comments are not what occurred here. First, the statements were not made while the prosecutor was presenting evidence. While likely improper in any circumstance, the timing of these comments is significant. When presented as commentary on the evidence, the grand jurors may be less swayed because they are contemporaneously presented with the facts and the elements of the crime. *Cf. United States v. Hogan*, 712 F.2d 757, 761 (2d Cir. 1983) (prosecutor's speculative statements about the accused's involvement in uncharged conduct was "fundamentally unfair" because it was done "in order to depict appellants as bad persons" and return an indictment not based on the evidence); *United States v. Al Mudarris*, 695 F.2d 1182, 1186 (9th Cir. 1983) ("The government had a perfectly coherent and convincing case for appellants' mail fraud without connecting this indictment to arson. That information served no purpose except to predispose the grand jury against [the accused].") They then

7

consider and weigh the evidence they have in front of them, freer to disregard any improper gloss the evidence clearly does not support. Conversely, here, the statements were some of the first words spoken to the grand jurors. They were made shortly after check-in, and before the judge entered the courtroom. No selection and empanelment had occurred, but they tainted everything the grand jury would hear afterwards. *See also* (Pl.'s Resp. at 4) (characterizing the issues before the grand jury—between the presentation of cases—as "slam dunks").

Unmoored to any evidence, these statements were presented as conclusive, overarching truths about all of the Defendants. This is similar to *Hogan*, where—when presenting evidence for a drug distribution indictment—the prosecution made speculative statements about the defendant's potential involvement in "two murders [and] corrupt activities as a policeman." 712 F.2d at 761. The Second Circuit found these statements "added a false aura of factual support to the government's case[, which] may well have deceived the grand jurors." *Id.* Here, the U.S. Attorney told future grand jurors the accused were "murderers." Of the eight defendants challenging their indictment, only one was indicted for murder. This statement adds a "false aura" to the conduct of the eight other accused individuals, whose alleged crimes are felon-in-possession of a firearm, possession with intent to distribute, and child pornography. It is plausible some grand jurors may have believed these individuals, particularly those charged with felon-in-possession of a firearm, were previously convicted of murder.

These statements cannot be downplayed as "perhaps overly informal and friendly" conversation. (Pl.'s Resp. at 8.) They were inflammatory and inappropriate. *See, e.g.*, *Hogan*, 712 F.2d at 761 (prosecutor's statement that the accused was "a real hoodlum" was "inflammatory," "fundamentally unfair," "flagrant," and "seriously impaired" the impartiality and independence of the grand jury); *United States v. Serubo*, 604 F.2d 807, 818 (3d Cir. 1979) (references to the accused violent tendencies and purported Mafia associations were impermissible). And, until proven guilty, they are incorrect. U.S. Const. Amend. V.

B.    *Statements and Conduct that Eroded the Independence of the Grand Jury*

The grand jury does not belong to the prosecutor. *Cf. Wood*, 370 U.S. at 390 ("[The grand jury] serves the invaluable function in our society of standing between the accuser and the accused."). It alone determines whether there is probable cause to believe a crime has been committed; "[t]he prosecutor may not circumvent this safeguard by overreaching conduct that deprives the grand jury of autonomous and unbiased judgment." *Al Mudarris*, 695 F.2d at 1185; *accord Hillman*, 642 F.3d at 934 ("[P]rosecutorial misconduct [that] is flagrant to the point that there is some significant infringement on the grand jury's ability to exercise independent judgment" may warrant dismissal). Generally speaking, the requirement of an independent grand jury requires prosecutors to respect the grand jury's role as the sole evaluator of evidence and witness credibility. *Hillman*, 642 F.3d at 934 ("A grand jury's independent judgment is compromised when the prosecutor's misconduct invades the grand jury's independent deliberative process . . . ."); *Al Mudarris* at 1187 ("A prosecutor may not deprive a grand jury of the opportunity to evaluate the credibility of witnesses."); *see also Serubo*, 604 F.2d at 818 (prosecutor may not make statements or argue in a manner calculated to inflame the grand jury unfairly against the accused).

In certain circumstances, overreaching conduct that erodes the boundary between these two independent entities may amount to a constitutional violation. For example, in *United States v. Breslin*, the court found the prosecutor compromised the grand jury's independence where he "attempted to bond with the grand jurors by providing them with donuts at their first meeting." 916 F. Supp. 438, 442 (E.D. Pa. 1996). The court found prosecutors have an "obligation not to engage in techniques, *either knowingly or inadvertently*, to curry favor with the grand jurors and lead them to abrogate their role as unbiased fact finders." *Id.* at 443 (emphasis added). Along with other instances of misconduct, such as improper characterization of the evidence and inserting the prosecutor's own opinions, the court dismissed the indictment. *Id.* at 443–48.

Here, during a break in the presentation of the evidence, the U.S. Attorney handed out his business cards to the grand jury and "invited the grand jury panel members to reach out to him." (Pl.'s Resp. at 4); *see also* (*id.*) (disclosing the U.S. Attorney asked for the list of grand jurors). This is

9

concerning on two fronts. First, by providing his business card—the business card of a high-ranking government official—and inviting the grand jurors to reach out to him, the U.S. Attorney appears to curry favor with the grand jurors. Second, at a fundamental level, a prosecutor should not be soliciting *ex parte* communications with grand jurors. *See United States v. Paniagua-Ramos*, 251 F.3d 242, 250 (1st Cir. 2001) ("The proposition that private communications between jurors and prosecutors during the course of a criminal trial are absolutely forbidden is so elementary as to require no citation of authority."); *United States v. Birdman*, 602 F.2d 547, 555 (3d Cir. 1979) (explaining the ABA's Code of Professional Responsibility, and the ABA's Standards Relating to Prosecutorial Function "are as pertinent to grand jury proceedings as they are to trials before petit juries"). Knowingly or inadvertently, this conduct eroded the constitutionally required independence of the grand jury.

Prosecutors also may not invade the grand jury's deliberative process with statements or conduct that rushes consideration or chills questions. This can manifest in many ways. For example, in *Breslin*, the prosecutor suggested "he would be presenting his case in as little time as possible for the convenience of the grand jurors," and "suggested that the grand jury needed to return the indictment quickly because the statute of limitations was about to run on some of the charges." 916 F. Supp. at 443, 445. Despite the prosecutor's later attempt to cure this issue, the court was deeply concerned "the government may have chilled the grand jury's questioning of the prosecutor and of witnesses." *Id.* at 443. The court's concerns were exacerbated by the fact that the "grand jury deliberated for less than fifteen minutes," *id.* at 445, despite "that the jury did, in fact, as ask a number of questions," *id.* at 443 (noting the grand jury asked twenty questions at one meeting and ten questions at another).

Similar issues concern the Court here. First, the U.S. Attorney told the venire the deliberations "won't take long." (Witness Statement Summ. at 1.) This statement is more pernicious than that made in *Breslin*, which centered on the *prosecutor's choice* to present the evidence briefly—out of respect for the grand jury's time. Conversely, here, the U.S. Attorney commented on how much time the grand jury themselves should take to deliberate, given his subjective evaluation of the strength of the evidence. Compounding this issue is the U.S. Attorney's other statement that the last grand jury was able to come

10

back in three minutes based on the evidence provided to them. (*Id.*) There is a genuine risk the grand jury may have absorbed this as a data point and thought three minutes is an appropriate or standard time to deliberate.[5]

Additionally, unlike in *Breslin*, where the prosecutor made an attempt at a curative instruction, there is no allegation the U.S. Attorney attempted to cure his statement in this case. The grand jury charge addresses this issue only incidentally. *Contrast Breslin*, 916 F. Supp. at 445 ("[A]ll of these are set to expire fairly soon [but] [t]hat does not mean you have to return this indictment. You can decide, I'm sorry, I don't have enough evidence. I still want to hear some more information and we will simply not charge these particular counts. And that's—your job is different than my job. I want to make sure you know that. Don't feel like there's any pressure for you guys to have to return it now just because these are about to expire."), *with* (Attach. 1 at 106:1–2) ("The grand jury is an independent body and does not belong to any branch of government."), *and* (*id.* at 109:12–14) ("[T]he foreperson may question the witness, and then any other member of the grand jury may ask questions of the witnesses."), *and* (*id.* at 109:22) ("You alone decide how many witnesses you want to hear."), *and* (*id.* at 113:20–21) ("You may decide after deliberation among yourself that further evidence should be considered before a vote is taken."). The presiding judge's general statements about the grand jury's role and authority do not adequately cure the U.S. Attorney's statements on this issue.

## II.    Prejudice to Defendants

The Government makes several arguments for why the U.S. Attorney's conduct was not prejudicial, including the U.S. Attorney's statements were "rooted in truth," the comments were "made in the abstract," and "the extensive selection process, the grand jury's oath, and the court's instructions emphasized the need for the grand jury to independently consider the evidence before it." (Pl.'s Resp. at

---

[5] The Court does not have evidence of the time of deliberation for the challenged cases. Nonetheless, the Court's concerns are exacerbated by the fact that in some of the challenged cases, minimal questions were asked, and the presentation of evidence was relatively brief. In at least two cases, no factual questions were asked at all.

9.) None of these explanations carry water when viewed against the volume and flagrancy of the misconduct.

This is not a case where a few off-hand statements were improperly sprinkled throughout the presentation of evidence in one defendant's case. This misconduct began with some of the first words spoken to the grand jurors by the U.S. Attorney, and as the U.S. Attorney's Office found it was required to disclose, the misconduct continued to permeate the proceedings in off-the-record conversations, occurring on the breaks between indictments. *See, e.g.*, *Breslin*, 916 F. Supp. 3d at 446 (finding prejudice where there was "misconduct from the first day the grand jury met [and] continuing through the day the superseding indictment was presented"). This is deeply concerning.

This conduct is on par with that found improper by the Tenth Circuit and other circuits. *See, e.g.*, *Hillman*, 642 F.3d at 935 (decision of the Tenth Circuit stating it was improper and conclusory for the prosecutor to use the word "fraud" to describe the evidence presented to the grand jury); *Hogan*, 712 F.2d at 761 (decision of the Second Circuit finding it was "fundamentally unfair" and "inflammatory" for the prosecutor to allow speculative testimony about the accused's participation in "crimes wholly irrelevant to the alleged drug transaction under federal investigation"); *Serubo*, 604 F.2d at 818 (decision of the Third Circuit finding it impermissible to reference the accused's purported Mafia associations and violent tendencies); *Al Mudarris*, 695 F.2d at 1186 (decision of the Ninth Circuit finding it served no purpose, besides inflaming the jury, for the prosecutor to speculatively infer the accused may have participated in crimes the grand jurors may have seen on the news).

Worse, these statements were used to describe all of the Defendants—regardless of the individual facts and circumstances particular to a defendant's alleged crimes. This is incompatible with the protections of our grand jury system; individuals must be indicted on the allegations presented against them, not based on fearmongering about abstract "bad guys." Grand juries serve "as a protector of citizens against *arbitrary* and oppressive governmental action." *United States v. Calandra*. 414 U.S. 338, 343 (1974) (emphasis added). To label *all* of the accused as "murderers," "bad guys," and "bad people" is fundamentally arbitrary.

The statements made about the expediency of the grand jury's deliberations and the weight of the evidence are likewise improper—under constitutional standards, ethical standards, DOJ policy, and case law. *See, e.g.*, U.S. Dep't of Just., *Federal Grand Jury Practice* 44–45 (1993) (Section III.F Relating Facts Not in Evidence); *id.* at 45 (Section III.G Testimony of the Prosecutor); *id.* (Section III.H Expression of Personal Opinion by Prosecutor). Together with the U.S. Attorney's attempts to bond with the grand jury and curry its favor, the conduct was "flagrant to the point that there [was] some significant infringement on the grand jury's ability to exercise independent judgment." *Hillman*, 642 F.3d at 606. No general proclamations of "independence" in the grand jury charge can adequately cure this pattern of conduct directly to the contrary.

The cumulative effect of the many known instances of misconduct leaves the Court with "grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia*, 487 U.S. at 256. In matters of the grand jury, prosecutors hold a special role: "On one hand he is a representative of the Executive seeking an indictment, on the other he is the representative of the United States who is looked to by the grand jury for an unbiased presentment." *United States v. Asdrubal-Herrera*, 470 F. Supp. 939, 943 (N.D. Ill. 1979). The presiding judge told the grand jurors, "[The Government's attorneys] will provide you with the most important service in helping you find your way when confronted with complex legal matters." (Order Disclosing Grand Jury Transcripts, Attach. 1 at 115:16–18). Abusing this special position of trust, the U.S. Attorney impaired the grand jury's integrity as an independent body.

Considering the facts and circumstances warranting this dismissal, and the potential impact on the administration of justice, the Court finds the indictments should be dismissed without prejudice. This is one of the few rare cases that rises to the level of dismissal. While the prejudice to Defendants is great, the Court's decision is not prejudicial to the Government. It may now take the case to new grand jury and start with a clean slate.

13

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' motions to dismiss grand jury indictments are **GRANTED** without prejudice. Due to the unusual nature of the issues raised and their impact this Court will stay its order in this matter until 5:00 p.m. mountain daylight time May 20, 2026, to allow the United States the opportunity to appeal. If the United States advises that it has no intent to appeal this Order will become effective immediately.

Dated this 15th day of May, 2026.

_____
Kelly H. Rankin
Chief United States District Judge

_____
Alan B. Johnson
United States District Judge

_____
Scott W. Skavdahl
United States District Judge